UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SHAUN ROBINSON,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>RENOWN REGIONAL MEDICAL CENTER, et. al.,<br><br>　　　　　　　　　　Defendants. | Case No. 3:16-cv-00372-MMD-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

　　　Before the court are Plaintiff's application to proceed in forma pauperis (IFP) (Electronic Court Filing (ECF) No. 1), and proposed pro se complaint (ECF No. 1-1).

## I. APPLICATION FOR LEAVE TO PROCEED IN FORMA PAUPERIS

　　　A person may be granted permission to proceed in forma pauperis (IFP) if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915; *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (stating that this provision applies to all actions filed in forma pauperis, not just prisoner actions).

　　　In addition, the Local Rules of Practice for the District of Nevada provide: "Any person, who is unable to prepay the fees in a civil case may apply to the court for authority to proceed *in forma pauperis*. The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

　　　"'[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty.'" *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (quoting *Jefferson v. United States*, 277 F.2d 823, 725 (9th Cir. 1960)). A litigant need not "be

absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont De Nemours & Co.*, 335 U.S. 331, 339 (1948).

A review of Plaintiff's application reveals that he is unable to pay the filing fee. As a result, Plaintiff's application to proceed IFP (ECF No. 1) should be granted.

## II. SCREENING

**A. Standard**

28 U.S.C. § 1915 provides: "the court shall dismiss the case at any time if the court determines that...the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). This provision applies to all actions filed in forma pauperis, whether or not the plaintiff is incarcerated. *See Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc); *see also Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) (per curiam).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and this court applies the same standard under Section 1915(e)(2)(B) when reviewing the adequacy of the complaint or amended complaint. *See Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) (citation omitted). Review under 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000).

In reviewing the complaint under this standard, the court must accept as true the allegations of the complaint, *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleadings in the light most favorable to plaintiff, and resolve all doubts in the plaintiff's favor, *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Allegations in pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers, and must be liberally construed. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam*); *Hamilton v. Brown*, 630 F.3d 889, 893 (9th Cir. 2011).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the

speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36 (3d ed. 2004)). At a minimum, a plaintiff should state "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (dismissed as frivolous); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Complaint**

In this action, Plaintiff asserts various violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § § 2000e, *et. seq*., and State law claims against Renown Regional Medical Center, Alma Medina, Allie Saunders, Teena Thomas, Krista Stryker, Susan Oetjen, Mandy Roberts, Leon Gill, and Megan Pailing, and Sonia Torres[1]. (ECF No. 1-1 at 1.) Plaintiff alleges that he was discriminated against because of his gender. (*Id*.)

He avers that he is a qualified Certified Nursing Assistant (CNA) within the State of Nevada, and was hired at Renown Regional Medical Center (Renown) on November 23, 2013. (*Id*. at 3.) He was terminated on October 16, 2014. (*Id*. at 3.) He claims he was the only male dayshift CNA, and that all of his supervisors were female. (*Id*.) He worked in the telemetry unit on the eighth floor of Renown's Tahoe Tower. (*Id*.)

Alma Medina is a Registered Nurse and was Plaintiff's manager during his time at Renown. (*Id*. at 5.) Teena Thomas is a Registered Nurse and was Plaintiff's nurse educator while he worked at Renown. (*Id*.) Suzanne Oetjen is a senior human resources representative at Renown. (*Id*. at 6.) Leon Gill is a human resources representative at Renown. (*Id*.) Allie Saunders was Plaintiff's supervisor as the charge nurse in the eighth floor telemetry unit in the

---

[1] Ms. Torres was not listed in the caption, but is included as a defendant in the body of the complaint.

1  Tahoe Tower. (*Id*.) Mandy Roberts was also a supervisor of Plaintiff's as a charge nurse on the
2  eighth floor telemetry unit in the Tahoe Tower. (*Id*.) Krista Stryker is a nurse at Renown. (*Id*. at
3  6-7.) Megan Pailing is a nurse and charge nurse at Renown. (*Id*. at 7.) Sonia Torres is a CNA at
4  Renown in the eighth floor telemetry unit in the Tahoe Tower. (*Id*.) He also includes Doe float
5  nurses as defendants. (*Id*.)
6        Plaintiff alleges that he filed a timely administrative charge of discrimination against
7  Renown with the Nevada Equal Rights Commission (NERC) on November 20, 2014, and with
8  the United States Equal Employment Opportunity Commission (EEOC) on January 26, 2015.
9  (*Id*.) EEOC issued a right to sue letter on June 8, 2016. (*Id*. at 8.)
10       Plaintiff contends that Renown uses its progressive discipline policy to "create a hostile
11 environment, harass, abuse, and to have an overall disparate impact on males at Renown as well
12 as treat men differently under this policy because they are men." (*Id*. at 10.) Plaintiff claims that
13 he was treated differently under the policies at Renown because he is a male CNA. (*Id*.) He avers
14 that Mandy Roberts and Alma Medina, both females, purposefully gave Plaintiff a poor ninety-
15 day evaluation because he is a male, with Ms. Roberts stating during the evaluation: "male
16 CNAs have a harder time than female CNAs." (*Id*. at 11.) Plaintiff filed an appeal and complaint
17 regarding this evaluation and gender discrimination, which Suzanne Oetjen and Leon Gill were
18 made aware of. (*Id*.) He claims the complaint was not investigated. (*Id*. at 11, 13.) Gill did email
19 Plaintiff for a meeting, but Plaintiff contends it did not occur because a false location was given.
20 (*Id*. at 13.)
21       He alleges that because he was a male CNA he was refused assistance when helping
22 patients, refused phone coverage for breaks, suffered discriminatory intimidation, ridicule and
23 insult, and was left out and avoided. (*Id*. at 11-12.) Jokes were directed at him and his role as a
24 male CNA, and female CNAs and nurses on the floor would laugh at him, stating that to be a
25 male nurse a person had to be gay. (*Id*.) He claims that because he was a male he was
26 consistently given more difficult work assignments. (*Id*.) Nurses ignored his call lights to
27 purposefully burden him so that he could not perform his job. (*Id*.) He states that the nurses on
28 his floor would spit or put patient's bodily excretions in his food left in the refrigerator, and

began to tape his food shut. (*Id*.) They would hide his reporting sheets, remove the vital sign machines he was using, and turn off bed alarms and blame Plaintiff. (*Id*. at 13.) He did not complain because he believed Ms. Medina would tell the person he complained about. (*Id*.) He mentions an incident where Ms. Thomas put a "prom queen tiara" on a male CNA who worked in the Sierra Tower telemetry unit. (*Id*.)

He goes on to allege that fellow CNA Torres accused Plaintiff of touching her leg, which led to an investigation and dismissal of the accusation. (*Id*. at 14.) Plaintiff sent a complaint and appeal of the accusation because he believed it was harassing, and an attempt to get him fired because he was a male. (*Id*.)

He claims he was given a corrective action notice with no verbal warning concerning a bed alarm that was turned off and not documenting something a nurse saw, but maintains the nurse he was working with was equally responsible for turning on and off the bed alarms and for documentation. (*Id*.) He appealed the corrective action, asserting it was harassment because he is a male. (*Id*.) He was told the complaints were forwarded to human resources, but no action was taken. (*Id*.)

On October 1, 2014, Plaintiff arrived to work and was working with Nurse Stryker, and alleges that she, along with Charge Nurse Saunders, antagonized and intentionally sabotaged his work by not answering their unit phones, avoiding him, avoided answering call lights, and their responsibilities to patients. (*Id*. at 15.) The entire workload fell on Plaintiff, and he made efforts to find them and to contact his supervisor, Ms. Medina, to no avail. (*Id*.) He left a message about the incident, and believes this was done intentionally to get him fired because he was a male. (*Id*.) He contends that Stryker and Saunders did not like him because he was a male. (*Id*.) Just after this, he was suspended. (*Id*.) On October 16, 2014, he met with Ms. Oetjen and Ms. Medina, where he received a notice of corrective action alleging: (1) falsification of documents (editing of temperature); and (2) failure to document two patients. (*Id*. at 16.) Plaintiff avers that he gave reasons to explain these incidents, but they were not taken into account or investigated, and instead became the basis for his discharge. (*Id*.) He claims that the real reason for his discharge was his gender. (*Id*.)

Plaintiff had asked for letters of recommendation from Ms. Medina and Ms. Thomas in August of 2014, advising them of the deadline, and they agreed to write the letters. (*Id*. at 17.) Then, on October 13, 2014, they declined to give him the letters, and he believes it was because of his gender and to keep him out of nursing because he is a male. (*Id*.)

Plaintiff contacted Renown's general counsel via email to reconcile the pending dismissal action, and on October 21, 2014, he received a letter regarding the email from Vice President of Human Resources Michelle Sanchez-Bickley, stating that the circumstances of his termination were not within the scope of eligibility of issues within the appeal policy. (*Id*. at 18.) On October 20, 2014, Plaintiff sent a letter to the Board of Governors of Renown to disclose the discrimination he suffered, but no action was taken. (*Id*.)

He includes the following claims: (1) disparate impact discrimination based on gender in violation of Title VII; (2) disparate treatment discrimination based on gender in violation of Title VII; (3) unlawful discrimination, discharge and refusal to refer for employment and admissions on the basis of gender in violation of Title VII; (4) being subject to different terms and conditions of employment because of his gender in violation of Title VII; (5) hostile work environment and harassment based on gender in violation of Title VII; (6) discrimination in compensation in violation of Title VII; (7) unreasonable intrusion upon the seclusion of another; and (8) intentional infliction of emotional distress.

He seeks to recover declaratory and injunctive relief as well as compensatory and punitive damages, costs and attorney's fees. (*Id*. at 25.)

**C. Analysis**

    **1. Title VII Claims-Exhaustion**

Title VII has exhaustion requirements that must be met prior to filing a court action. 42 U.S.C. § 2000e-5; *Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001). A person seeking relief under Title VII must first file a charge with the EEOC within 180 days of the alleged unlawful employment practice, or, if the person initially instituted proceedings with the state or local administrative agency, within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). If the EEOC does not bring suit based on the charge, it will

issue a right to sue letter. 42 U.S.C. § 2000e-5(f)(1). Once a person receives the letter, he or she has ninety days to file suit. § 2000e-5(f)(1).

Plaintiff alleges that he timely exhausted his administrative remedies with the EEOC, which is a prerequisite to filing a civil action against an employer under federal law. He filed his charge of discrimination with NERC on November 20, 2014, thirty-one days after he was discharged. (ECF No. 1-1 at 7.) He filed a charge with the EEOC on January 26, 2015, which is within 300 days of the alleged unlawful employment practice. (*Id.*) The EEOC issued its right to sue letter on June 8, 2016, and he filed this suit on June 24, 2016, within ninety days of receiving the right to sue letter. (*Id.*) Therefore, he has sufficiently alleged exhaustion of his administrative remedies.

**2. Claim 1: Disparate Impact under Title VII**

Under Title VII, an employer may not "discriminate against an individual with respect to ... terms, conditions, or privileges of employment' because of ... sex." 42 U.S.C. § 2000e-2(a)

"[D]isparate-impact claims involve employment practices that are *facially neutral* in their treatment of different groups but that in fact call more harshly on one group than another and cannot be justified by business necessity." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52-53 (2003) (emphasis added). "[A] facially neutral employment practice may be deemed illegally discriminatory without evidence of the employer's subjective intent to discriminate that is required in a 'disparate treatment' case." *Id*. A plaintiff asserting a disparate impact claim must establish the existence of an employer's practice or policy; that has significant adverse effects on persons of a protected class; that the impact of the policy is on terms, conditions or privileges of employment of the protected class; and the employee population in general is not affected by the policy to the same degree. *Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1486 (9th Cir. 1993).

Plaintiff alleges that Renown had seemingly neutral policies, including its review and progressive discipline policies, that resulted in a disparate impact to male CNAs. Therefore, he states a colorable disparate impact treatment claim under Title VII. It should be noted that equitable relief is the only relief available in a disparate impact case. 42 U.S.C. § 1981(a)(c).

///

**3. Claim 2: Disparate Treatment under Title VII**

Here, Plaintiff alleges that Defendants intentionally treated him differently because he is a male; that other CNAs and nurses took the same actions as he did but were not terminated; that they reviewed him differently as a male; and that they did not investigate or take seriously his complaints of discrimination. (ECF No. 1-1 at 19-20.)

"Under Title VII, an employer may not 'discriminate against an individual with respect to ... terms, conditions, or privileges of employment' because of ... sex. 42 U.S.C. § 2000e-2(a). This provision makes 'disparate treatment' based on sex a violation of federal law." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061-62 (9th Cir. 2002) (citing *Llamas v. Butte Comm. Coll. Dist.*, 238 F.3d 1123, 1126-27 (9th Cir. 2001)). To show disparate treatment under Title VII, Plaintiff must allege that: (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to adverse employment action; and (4) similarly situated women were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004).

Plaintiff has alleged he is a male, was qualified for the CNA position, was subjected to adverse employment action (termination), and that other CNAs and nurses were not terminated when they acted in the same manner as Plaintiff. Therefore, he states a colorable claim for disparate treatment discrimination under Title VII. Compensatory and punitive damages are authorized in disparate treatment cases under Title VII. 42 U.S.C. § 1981a(a)(1).

**4. Claim Three: Unlawful discrimination, discharge and refusal to refer employment and admissions based on gender in violation of Title VII**

Plaintiff alleges that Defendants discriminated against him and terminated him because of his gender and the reasons proffered for his termination are false. (ECF No. 1-1 at 20-21.)

It is unlawful under Title VII to fail to refuse to refer a person for employment, to discharge a person, and discriminate against a person based on his or her gender. 42 U.S.C. § 2000e-2(a)(1).

Plaintiff alleges that he was unlawfully discriminated against because of his gender; that his supervisors failed to refer him for employment because of his gender, and that he was

- 8 -

discharged because of his gender. Therefore, he states a colorable claim under Title VII based on these allegations. *See also Gomez v. Alexian Bros. Hosp. of San Jose*, 698 F.2d 1019, 1021 (9th Cir. 1983) (unlawful discrimination where employer interferes with employment opportunities with another employer).

**5. Claim Four: Different Terms and Conditions of Employment Based on Gender in Violation of Title VII**

Plaintiff alleges that Defendants created a work environment permeated with discriminatory intimidation, ridicule and insult which altered the terms and conditions of his employment. (ECF No. 1-1 at 21-22.)

Under Title VII, employers may not discriminate against a person with respect to compensation, terms, conditions or privileges of employment. 42 U.S.C. § 2000e-2(a). Therefore, he states a claim based on these allegations.

**6. Claim Five: Hostile Environment and Harassment Based on Gender in Violation of Title VII**

Title VII prohibits "the creation or perpetuation of a hostile work environment." *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64-67 (1986). "[T]he plaintiff must show that the work environment was so pervaded by discrimination that the terms and conditions of employment were altered." *Vance v. Ball State University*, 133 S.Ct. 2434, 2441 (2013) (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). "Workplace conduct is not measured in isolation; instead, 'whether an environment is sufficiently hostile or abusive' must be judged 'by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Clark County School Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 787-88 (1998)). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* (quoting *Faragher*, 524 U.S. at 788).

"Title VII's prohibition on discrimination 'because of ... sex' protects men as well as women[.]" *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78 (1998) (citing *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 682 (1983)).

The Ninth Circuit has permitted hostile environment sexual harassment claims based on verbal abuse, even in the absence of any physical touching. *Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864, 869 (9th Cir. 2001). The Ninth Circuit has likewise allowed hostile environment sexual harassment claims when the conduct complained of was not sexual in nature. *EEOC v. National Education Ass'n, Alaska*, 422 F.3d 840, 845 (9th Cir. 2005).

"If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Vance v. Ball State University*, 133 S.Ct. 2434, 2439 (2013). If the harasser is a supervisor, and the "supervisor's harassment culminates in a tangible employment action, the employer is strictly liable." *Id*. "[A]n employee is a "supervisor" for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim[.]" *Id*.

Plaintiff states a colorable hostile work environment harassment claim under Title VII based on his allegations of perceived sabotage, making fun of him because he was a male CNA, and that his complaints or attempts to disclose the harassment were ignored. (ECF No. 1-1 at 22-23.)

**7. Claim Six: Equal Pay and Compensation Discrimination Based on Gender in Violation of Title VII**

Title VII prohibits compensation discrimination on the basis of sex. 42 U.S.C. § 2000e-5(e)(3)(A).

> *Id*. [A]n unlawful employment practice occurs, with respect to discrimination in compensation in violation of this subchapter, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

*Id*.

Plaintiff alleges that he was offered $11.30 per hour, the lowest wage Renown will pay a CNA. (ECF No. 1-1 at 9.) He was bumped to $12.65 per hour based on a market analysis done by Renown. (*Id*.) Renown gives raises to its employees once a year, and Plaintiff's was scheduled for November 18, 2014. (*Id*.) Plaintiff alleges he was hired on at the lowest wage possible for CNAs despite his transferable skill base, and that Renown purposefully terminated him before his yearly raise. (ECF No. 1-1 at 23.) He avers that the proximity of his termination and scheduled raise were timed as such because of his gender. (*Id*. at 9.)

Plaintiff states a colorable claim that he was discriminated against in terms of his compensation based on his gender under Title VII.

**8. Title VII Defendants:**

Title VII prohibits unlawful employment practices by employers that have fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year. 42 U.S.C. § 2000e-2(a)-(d), § 2000e(b). Plaintiff has sufficiently alleged Renown is an employer for purposes of Title VII. The definition of employer includes "any agent" of the employer. 42 U.S.C. § 2000e(b).  This means, "[i]n express terms, Congress has directed federal courts to interpret Title VII based on agency principles," *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 754-55 (1998), meaning that employers have respondeat superior liability and the discriminatory actions of the agent may be imputed to the employer.

The Ninth Circuit has held that Title VII limits civil liability to the employer. *Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583, 587 (9th Cir. 1993) (citing 42 U.S.C. § 2000e-5(g).) "The statutory scheme itself indicates that Congress did not intend to impose individual liability on employees." *Id*. at 587. Thus, "individual defendants cannot be held liable for damages under Title VII[.]" *Id*. The individual employees may be subject to injunctive relief which Plaintiff seeks here, and as such, the individuals may continue to be named as defendants insofar as the Title VII claims are concerned.

**9. Claim Seven: Unreasonable Intrusion Upon Seclusion**

Nevada recognizes the privacy tort of unreasonable intrusion upon seclusion, relying on the Restatement of Torts as a "physical invasion upon the 'solitude or seclusion' of another,"

"the rationale being that one should be protected against intrusion by others into one's private 'space' or private affairs." *People for Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 111 Nev. 615, 630, 895 P.2d 1269, 1279 (Nev. 1995) (citation omitted) *overturned on other grounds by City of Las Vegas Downtown Redev. Agency v. Hecht*, 113 Nev. 644, 650, 940 P.2d 134, 138 (1997). "Simply put, the intrusion tort gives redress for interference with one's 'right to be left alone.'" *Id*. In asserting this tort, a plaintiff must allege: (1) an intentional intrusion (physical or otherwise); (2) on the solitude or seclusion of another; (3) that would be highly offensive to a reasonable person." *Id*. The plaintiff "must show that he or she had an actual expectation of seclusion or solitude and that expectation was objectively reasonable." *Id*., 111 Nev. at 631, 895 P.2d at 1279. "The extent to which seclusion can be protected is severely limited by the protection that must often be accorded to the freedom of action and expression of those who threaten the seclusion of others." *Id*., 895 P.2d at 1279 (citation omitted). "The question of what kinds of conduct will be regarded as 'highly offensive' intrusion is largely a matter of social conventions and expectations." *Id*. at 1281 (citation omitted). In making this determination courts should look at: "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Id*. at 1282.

        The court finds Plaintiff has not stated a colorable claim for unreasonable intrusion upon seclusion in his seventh claim for relief. (ECF No. 1-1 at 23-24.) Plaintiff alleges he entered into a romantic relationship with a nurse who worked in a different unit at Renown, and then Defendants gave her legal counsel, instructed and advised this woman, which invaded *his* privacy by becoming involved in his personal relationship. (*Id*.) Plaintiff has not included allegations that demonstrate an intrusion into *his* seclusion. Nor has he alleged facts that reveal an intrusion that would be highly offensive to a reasonable person. He avers that Renown, this woman's employer, gave her legal counsel and advised her. The court simply cannot conclude that this conduct would be offensive to a reasonable person. As such, the court recommends that this claim be dismissed. The court cannot envision a set of circumstances where these underlying

facts would give rise to the privacy tort of intrusion upon seclusion; therefore, the dismissal should be with prejudice.

### 10. Claim Eight- Intentional Infliction of Emotional Distress

A plaintiff asserting an intentional infliction of emotional distress claim in Nevada must allege: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Star v. Rabello*, 97 Nev. 124, 125, 625 P.2d 90, 92 (Nev. 1981).

Plaintiff alleges that he was discriminated against because he was a male CNA; that other nurses and CNAs made jokes about him and intentionally sabotaged his work so that he would be fired, and he was eventually terminated. He claims that as a result of the discrimination he endured, he suffered humiliation, mental anguish and emotional distress.

While Plaintiff does not use the words "severe or extreme," the court affords the complaint the liberal interpretation to which pro se pleadings are entitled, and finds Plaintiff's allegations that he suffered humiliation, mental anguish and emotional distress along with the factual description of the events he claims to have endured as sufficient to satisfy the pleading requirements for a State law claim of intentional infliction of emotional distress. To prevail on this claim, Plaintiff will eventually have to prove he actually suffered extreme or severe emotional distress.

### **RECOMMENDATION**

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order:

(1) **GRANTING** Plaintiff's application to proceed IFP (ECF No. 1). Plaintiff is permitted to maintain this action to conclusion without the necessity of prepayment of fees or costs or the giving of security therefor. This order granting in forma pauperis status does not extend to the issuance of subpoenas at government expense;

(2) Directing the Clerk to **FILE** the complaint (ECF No. 1-1);

(3) Allowing the complaint to **PROCEED** on the Title VII claims in Counts One through Six and the intentional infliction of emotional distress claim in Count Eight;

1          (4) **DISMISSING WITH PREJUDICE** the unreasonable intrusion upon seclusion claim

2   in Count Seven; and

3          (5) Directing the Clerk to **ISSUE** a summons for the each of the named defendants and

4   send Plaintiff copies of the complaint and service of process forms (USM-285). Plaintiff should

5   be given twenty days to complete the USM-285 form and return it to the U.S. Marshal to

6   complete service upon the defendants. Within twenty days of receiving from the U.S. Marshal a

7   copy of the USM-285 form showing whether service has been accomplished, Plaintiff should be

8   directed to file a notice with the court indicating whether the defendants were served. If service

9   was not effectuated, and if Plaintiff wishes to have service attempted again, he must file a motion

10  with the court providing a more detailed name and/or address for service of the unserved

11  defendants, or indicating that some other method of service should be attempted. Plaintiff should

12  be reminded that pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, service must be

13  accomplished within ninety days of the date of any order adopting this Report and

14  Recommendation.

15         Plaintiff should be advised:

16         1. That he may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to

17  this Report and Recommendation within fourteen days of receipt. These objections should be

18  titled "Objections to Magistrate Judge's Report and Recommendation" and should be

19  accompanied by points and authorities for consideration by the district judge.

20         2. That this Report and Recommendation is not an appealable order and that any notice of

21  appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

22  until entry of judgment by the district court.

23  DATED:  August 8, 2016.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE

- 14 -